05-CV-01801-CMP

FILED    ENTERED
LODGED    RECEIVED

OCT 2 7 2005   DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHIHULY, INC., a Washington
corporation and PORTLAND PRESS,
INC., a Washington corporation,

         Plaintiffs,

   vs.

ROBERT KAINDL, an individual;
BRYAN RUBINO, individually and on
behalf of his marital community; ART
GLASS PRODUCTION, a Washington
company; LAKESHORE GALLERY,
LTD., a Washington corporation;
KENNETH BEHM GALLERIES, LTD.,
a Washington corporation; TRAMMELL-
GAGNE, LLC, a Washington limited
liability company; and UNIK!, LLC, a
Washington limited liability company,

         Defendants.

No. CV05·1801 JPD

COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES FOR:

1. VIOLATIONS OF THE FEDERAL
   COPYRIGHT ACT;
2. VIOLATIONS OF THE FEDERAL
   LANHAM ACT AND UNFAIR
   COMPETITION;
3. VIOLATIONS OF THE WASHINGTON
   CONSUMER PROTECTION ACT;
4. CIVIL CONSPIRACY;
5. BREACH OF CONTRACT;
6. INTENTIONAL INTERFERENCE WITH
   CONTRACT;
7. INJUNCTIVE RELIEF; AND
8. DECLARATORY RELIEF

## I.    NATURE OF THE ACTION.

1.      This is an action for copyright infringement, trademark infringement, unfair

competition under the Lanham Act, violations of the Washington State Consumer Protection Act,

civil conspiracy, breach of contract, intentional interference with contract and declaratory and

COMPLAINT - 1
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1   injunctive relief.  As fully set forth herein, the actions of Defendants have and will continue to

2   cause substantial and irreversible damage to Plaintiffs by, among other things, reproducing

3   Plaintiffs' copyrighted works for sale, using Plaintiffs' name and reputation to attract customers

4   to their businesses, falsely suggesting an association with or endorsement by Plaintiffs of

5   Defendants' operations, and engaging in other unlawful acts of unfair competition.

6

7       2.      Specifically, Plaintiffs' allege that Defendant Bryan Rubino, a former employee

8   of Plaintiffs, is making unauthorized copies of Plaintiffs' copyrighted works, and these copies

9   are substantially, often strikingly, similar to Plaintiffs' works.  Rubino then sells these copies to

10  Defendant Kaindl, who resells the copies as his own original artwork through his extensive

11  collection of websites, and also at galleries such as Defendants Kenneth Behm Galleries, Ltd.,

12  Lakeshore Gallery, Ltd., Trammell-Gagne, LLC, and Unik!, LLC.  Rubino also sells these

13  infringing copies himself under the fictitious name "Lestat" at Defendant Lakeshore Gallery.

14

15      3.      Plaintiffs seek a temporary restraining order to enjoin Defendants' unlawful acts,

16  a preliminary injunction for the same, an order for impounding and destruction of the infringing

17  goods, actual damages, and Defendants' profits attributable to these unlawful acts.

18  **II.    PARTIES.**

19

20      4.      Plaintiff Chihuly, Inc. (hereinafter, "Chihuly") is a Washington state corporation

21  with its principal place of business in Seattle, King County, Washington.  Chihuly represents the

22  artwork of Dale Chihuly, including Mr. Chihuly's blown glass artwork.  Mr. Chihuly has created

23  a wide vocabulary of blown glass forms, and this broad body of work encompasses several

24  distinct *series* of works, each with their own inherently distinctive aesthetic.

25      5.      Plaintiff Portland Press, Inc. (hereinafter, "Portland Press) is a Washington state

26  corporation with its principal place of business in Tacoma, Pierce County, Washington.  Portland

27

28  COMPLAINT - 2
    {63796.DOC}

1  Press publishes books, videos and DVDs about Mr. Chihuly and glassmaking.  Portland Press

2  also presents certain edition blown glass sculptures ("Studio Editions") and original limited

3  edition prints.

4
5          6.       Upon information and belief, Defendant Robert Kaindl (hereinafter, "Kaindl") is

6  an individual residing in Redmond, King County, Washington.  Upon further information and

7  belief, Defendant Kaindl owns and/or operates over 50 websites, including but not limited to the

8  following URLs: http://www.artglassproductions.com; http://www.artcrystal.org/; http://www.3-

9  dcrystal.net; http://www.3-dimages.net; http://www.3dlaserimages.com;

10  http://www.artcrystal.org; http://www.artglass.org; http://www.artglassartists.com;

11  http://www.artglassmuseum.com; http://www.artglassstudio.net; http://www.artlaser.org;

12  http://www.contemporaryglassart.net; http://www.corporateawards.info;

13  http://www.corporatecrystalawards.com; http://www.crystalart.org; http://www.crystalix.ws;

14  http://www.crystalixlaserart.com; http://www.crystalixlasercrystal.com;

15  http://www.customglassart.com; http://www.galleryglass.net; http://www.glassartgallery.net;

16  http://www.glassartist.ws; http://www.glassartists.us; http://www.glassartmuseum.org;

17  http://www.glassblowers.org; http://www.hotglass.info; http://www.hotglassart.net;

18  http://www.hotshop.ws; http://www.hotshops.org; http://www.laserart.org;

19
20  http://www.lasercrystal.org; http://www.lasercrystalart.com; http://www.laserglass.net;

21  http://www.lasertechdesign.com; http://www.lasertechdesigns.com;

22  http://www.lasertekdesign.com; http://www.lasertekdesigns.com; http://www.lazertek.org;

23  http://www.urbanglass.net.  Each of these websites claims a mailing address of P.O. Box 98,

24  Kirkland, Washington, 98083.

25          7.       Upon further information and belief, Defendant Kaindl transacts business under

26
27
28

COMPLAINT - 3
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2670
SEATTLE, WASHINGTON 98104
(206) 624-1933

1  several trade names, including Defendant Art Glass Production, which has a Unified Business

2  Identifier ("UBI") number of 600569166 and purports to be a sole proprietorship.  According to

3  the Washington State Department of Revenue, the business location of Art Glass Production is

4  14208 21st Street SE, Mill Creek, Washington 98012, which, upon further information and belief,

5  is the location of Kaindl's mother's hair salon.  Art Glass Production does not appear to be

6  registered with the Washington Secretary of State.

7

8         8.      Upon information and belief, Defendant Bryan Rubino ("Rubino") is a married

9  individual residing in Thurston County, Washington.  Rubino is a former employee of Plaintiff

10 Chihuly and also worked as an independent contractor until 2004.  Upon further information,

11 Rubino produces original blown glass sculptures for Rubino Glass, Inc., which maintains a

12 studio at 52 West Fredson Road, Shelton, Washington, 98584.  Upon further information and

13 belief, Rubino also produces unauthorized copies of Plaintiffs' copyrighted sculptures for

14 co-Defendants Kaindl, Art Glass Production, Lakeshore Gallery, Kenneth Behm Galleries,

15 Trammell-Gagne and Unik! Gallery, and all of these sculptures are substantially, even strikingly,

16 similar to those created by Plaintiffs.

17

18        9.      Upon information and belief, Defendant Lakeshore Gallery, Ltd. (hereinafter,

19 "Lakeshore Gallery") is a Washington corporation with a principal place of business at 107 Park

20 Lane, Kirkland, Washington 98033.  Upon further information and belief, Lakeshore Gallery

21 sells artwork made by co-Defendant Rubino, which is marketed under the name "Robert Kaindl"

22 and/or "Lestat."

23

24        10.     Upon information and belief, Defendant Kenneth Behm Galleries. Ltd.

25 (hereinafter, "Behm Galleries" or "Kenneth Behm Galleries") is a Washington corporation with

26 a corporate office at 3003 Northrup Way, No. 100, Bellevue, Washington, 98004.  Upon further

27

28

COMPLAINT - 4
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

information, Behm Galleries operate retail stores under the name "Kenneth Behm Gallery" at 1023 Bellevue Square, Bellevue, Washington, 98004 and at 646 Southcenter Mall, Seattle, Washington, 98188, and also operates a retail store under the name "Square One" at 1085 Bellevue Square, Bellevue, Washington, 98004. Upon further information and belief, Kenneth Behm Galleries sells unauthorized copies of Plaintiffs' copyrighted sculptures, made by co-Defendant Rubino, which are marketed and sold under the name of co-Defendant Kaindl.

11.    Upon information and belief, Defendant Trammell-Gagne, LLC (hereinafter, "Trammell-Gagne") is a Washington limited liability company with a principal place of business at 5701 Sixth Avenue South, Suite 105, Seattle, Washington 98108. Upon further information and belief, Trammell-Gagne sells unauthorized copies of Plaintiffs' copyrighted sculptures, made by co-Defendant Rubino, which are marketed and sold under the name of co-Defendant, Kaindl.

12.    Upon information and belief, Defendant Unik! LLC (hereinafter, "Unik!") is a Washington limited liability with a principal place of business at Pacific Place Mall, 600 Pine Street, No. 345, Seattle, Washington, 98101. Upon further information, Unik! sells unauthorized copies of Plaintiffs' copyrighted sculptures, made by co-Defendant Rubino, which are marketed and sold under the name of co-Defendant Kaindl.

## III.    JURISDICTION AND VENUE.

13.    This is a civil action for claims arising under the federal copyright and trademark laws of the United States, and supplemental claims arising under Washington state law. This Court has original jurisdiction of the federal copyright and trademark claims pursuant to 28 U.S.C. §1338(a), 28 U.S.C. 1331 (federal question), and 15 U.S.C. §1121 (action arising under the Lanham Act), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) (action asserting a claim of unfair competition joined with a substantial and related claim under federal copyright or trademark laws).

COMPLAINT - 5
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1

2   14.     Venue is proper in the United States District Court for the Western District of

3   Washington pursuant to 28 U.S.C. § 1391(a) and (c).  Defendants have transacted business in,

4   and have had continuous and systematic contacts with, this District.  A substantial part of the

5   events or omissions giving rise to the claims occurred in this District.

6   IV.   FACTS.

7        A.     Background Facts and Relationship of the Plaintiffs.

8                              *Dale Chihuly*

9   15.     Dale Chihuly's career with blown glass began in the late 1960's, when

10  Mr. Chihuly entered the glassblowing program at the University of Wisconsin at Madison.

11  There, Mr. Chihuly studied under Harvey K. Littleton, a founder of the *Studio Glass* movement,

12  a method of blowing glass that moved glassblowing away from impersonal, factory-like settings

13  and into smaller, more intimate studios with closely-knit glassblowing teams.

14

15  16.     Trained in interior design and fine art, Mr. Chihuly had long been fascinated with

16  the medium of glass and had experimented with melted glass adornments on his woven textiles.

17  In 1968, after earning an M.F.A from the Rhode Island School of Design in 1968 and being

18  awarded a Fulbright scholarship for glass studies, Mr. Chihuly served as an apprentice in

19  Murano, Italy, where he observed the concept of team glassmaking and the possibilities of

20  creating unconventional and innovative shapes and designs with a material that could be both

21  flexible in conception and unforgiving in final form.

22

23  17.     Mr. Chihuly returned to the United States inspired, and founded the glassblowing

24  program at the Rhode Island School of Design, and co-founded the Pilchuck Glass School in

25  Stanwood, Washington.  He also went on to create the first of his many series of sculptures, the

26  *Navajo Blanket* series, which featured woven textiles on blown glass vessels.  In 1976, the

27

28

COMPLAINT - 6
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624 1933

1   Metropolitan Museum of Art purchased three of these sculptures for their permanent collection.

2       18.     A few years later, Mr. Chihuly created his *Basket* series.  Among his many

3   contributions to the art of blown glass, Mr. Chihuly was a pioneer in the shift from symmetrical

4   shapes to more off-centered and asymmetrical forms.  Glass as material has been in use for 5,000

5   years, and for the last 2,000 years, glassblowers have been primarily concerned with making

6   symmetrical, centered objects.  In his *Basket* series, Mr. Chihuly made an abrupt departure from

7   the notion of centered works, making instead glass sculptures that appear to be collapsing, frozen

8   in time.

9       19.     In 1976, Mr. Chihuly suffered a near-fatal car accident, which left him without

10  sight in his left eye and permanent damage to his right ankle and foot.  After he dislocated his

11  shoulder three years later, Mr. Chihuly was rendered unable to function as a glassblower for his

12  own original creations.  As a result, he began using drawings and paintings as a means for

13  directing his glassblowing team and communicating to them his vision and design for his series

14  and installations.

15      20.     Under this Studio Glass method of glassmaking, Mr. Chihuly conceives of a

16  design for a blown glass sculpture and renders that design to a fixed medium.  The team of

17  glassblowers then endeavors to translate this design into a blown glass prototype that

18  Mr. Chihuly further refines and designs.  When Mr. Chihuly is satisfied with the design, the

19  glassblowing team renders a finalized, wholly unique sculpture.

20      21.     Stylistically during the past forty years, Mr. Chihuly's sculptures in glass have

21  explored color, line, and assemblage.  Although his work ranges from the single vessel to

22  indoor/outdoor site-specific installations, he is best known for his multipart blown compositions.

23  These works fall into the categories of mini-environments designed for the tabletop and large,

COMPLAINT - 7
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1993

1   often serialized forms displayed in groupings on pedestals or attached to specially engineered

2   structures that dominate large exterior or interior spaces.

3       22.     Mr. Chihuly has created a wide vocabulary of blown forms, revisiting and

4   refining earlier shapes while at the same time creating exciting new elements.  This broad body

5   of work encompasses several inherently distinct series of works, each with their own aesthetic

6

7   and secondary meaning.

8                                   *Chihuly, Inc.*

9       23.     Chihuly, Inc. was founded in 1985, after Mr. Chihuly was finally able to invest in

10  his own glassblowing studio (and the considerable equipment and infrastructure associated

11  therewith) and hire his own team of employees to implement his designs.

12

13      24.     While creating his blown glass sculptures for his namesake company,

14  Mr. Chihuly expanded the Studio Glass movement, working with a collaborative team of

15  glassblowers and dispelling the notion of the solitary artist working alone in a studio.

16      25.     The glassblowing teams at Chihuly create unique, one of a kind glass sculptures,

17  such that no two sculptures in a series are identical, but share a common and wholly distinctive

18  aesthetic.  When viewed as a collection or *series*, the individual sculptures express this aesthetic

19  of the series in a variety of shapes and colors.

20

21      26.     The sculptures made by Mr. Chihuly and his glassblowing team are work-for-hire

22  works within the meaning of the federal copyright laws, and Chihuly is the lawful owner of the

23  copyrights in these works.

24      27.     Because each individual sculpture in a series by Chihuly is unique, such that no

25  copies of the sculpture are made, the sculptures made by Chihuly are unpublished within the

26  meaning of the copyright laws.  Chihuly has certificates of copyright registration for

27

28

COMPLAINT - 8
{63796.DOC}

1  representative sculptures in each series and intends to seek certificates of registration to claim all

2  unpublished sculptures and/or installations.

3      28.    Chihuly is the owner of several registered trademarks for "CHIHULY," including

4  Registration No. 2418821 for the mark in International Class 21 for "sculptures made primarily

5  from glass." This mark was registered on January 9, 2001, and Chihuly has developed

6  substantial goodwill in the "CHIHULY" mark.

7

8                          ***Portland Press, Inc.***

9      29.    In 1992, Plaintiff Portland Press, Inc. was established as a small publishing

10  company dedicated to the production of books about glassblowing and about Mr. Chihuly.

11  Portland Press now publishes books, videos, DVDs, note cards, calendars, postcards and posters.

12      30.    Portland Press also publishes certain edition blown glass sculptures ("Studio

13  Editions") and original limited edition prints. The Studio Edition Glass program began in 1994

14  when Portland Press released its first glass Studio Edition, the *Cobalt Blue Basket*. Each year,

15  Mr. Chihuly interprets one or more of his series and selects a sculpture that will be reproduced in

16  limited numbers, although due to the process involved in hand-blowing, each individual piece

17  varies slightly in color, size, and shape. These Studio Edition sculptures are then offered for sale

18  in galleries, museums and on Portland Press' website.

19      31.    Because Portland Press offers copies of a work for distribution and sale, these

20  sculptures are published within the meaning of the federal copyright laws.

21

22      32.    Portland Press has certificates of copyright registration for the Studio Editions it

23  has published and sold.

24

25

26

27

28

COMPLAINT - 9
{63796.DOC}

1

2

**B.        Overview of the Relevant Copyrighted Work.**

*Navajo Blanket Cylinders*

3

4

33.        In 1975, Mr. Chihuly began his first series, the *Navajo Blanket Cylinders*. This

5

series featured complex thread drawings (known as "glass pickup drawings," primarily of Native

6

American textiles) on blown glass vessels. In 1976, the Metropolitan Museum of Art in New

7

York acquired three of these cylinders for the museum's permanent collection. Examples of

8

these works are displayed on Plaintiffs' website, specifically at the URL

9

http://www.chihuly.com/cylinders/cylnav01.html.

10

34.        Chihuly continues to create sculptures for this series, including the *Red Blanket*

11

*Cylinder* for Portland Press in 2000. Portland Press has a certificate of copyright registration for

12

this sculpture, which is attached hereto as Exhibit A.

13

14

*Basket Series*

15

35.        In 1977, Mr. Chihuly began his *Basket* series, which were inspired by the

16

Northwest Coast Indian baskets he had admired at the Washington Historical Society in Tacoma,

17

Washington. Mr. Chihuly sought to simulate, in blown glass form, the woven forms that had

18

sagged under their own weight, frailty and age. In so doing, Mr. Chihuly liberated the

19

glassblowing process from the restrictions of symmetry, allowing glass to do what it wanted to

20

do naturally – respond to gravity. The result is the *Basket* series of sculptures which appear

21

collapsed or slumped, and this trade dress is inherently distinctive and has secondary meaning in

22

the market.

23

24

36.        The *Basket* series also marked the first time that Mr. Chihuly grouped vessels into

25

sets, such that a single sculpture would nest numerous internal elements, each with a unique and

26

wholly original shape. Originally, these sculptures were earth-toned and red, but later variations

27

28

COMPLAINT - 10
{63796.DOC}

1   included more vibrant colors.

2       37.    Examples of these *Basket* series works are displayed on Plaintiffs' website,

3   specifically at the URL http://www.chihuly.com/baskets/selbas.html.

4

5       38.    Chihuly continues to create sculptures for this *Basket* series and Plaintiffs have

6   certificates of copyright registration for many representative sculptures in the *Basket* series.

7   Specifically, Portland Press have certificates of registration for the following Studio Editions: the

8   1994 *Cobalt Blue Basket with Cadmium Red Lip Wrap*; the 1998 *Coral Basket with Golden*

9   *Wrap*; the 2000 *Mango Basket with Teal Lip Wrap*; the 2001 *Paris Blue Basket Set*; the 2002

10  *Citron Basket*; the 2003 *Bonfire Baskets*; and the 2004 *Blue Sky Basket Set*.

11      39.    Chihuly has a certificate of registration for the 1993 *Pearlized Purple Basket with*

12  *Yellow Lip Wrap*.

13

14      40.    Attached hereto as Exhibit B are true and correct copies of the certificates of

15  registration for *Basket* series sculptures.

16            ***Seaform Series***

17      41.    In 1980, Mr. Chihuly began creating sculptures for his *Seaform* series, which

18  demonstrates Mr. Chihuly's expression of the shapes and colors of marine creatures and objects.

19  The *Seaform* series evolved out of the *Basket* series, as Mr. Chihuly used optic, ribbed molds to

20  increase the strength of the thin-walled glass and shifted in color to whites, pinks, and grays.

21  The irregular shapes, the varying size of pieces, and the translucent color of the *Seaforms* capture

22  the essence of the organisms that live in the seas, and the trade dress of this series is inherently

23  distinctive and has secondary meaning in the market.

24

25      42.    Examples of these *Seaform* series works are displayed on Plaintiffs' website,

26  specifically at the URL http://www.chihuly.com/seaforms/selsea.html.

27

28

COMPLAINT - 11
{63796.DOC}

43.     Chihuly continues to create sculptures for this series, and Plaintiffs have certificates of copyright registration for many representative sculptures in the *Seaform* series. Specifically, Portland Press has certificates of registration for the following Studio Editions: the 1995 *Chinese Red Seaform Pair with Ebony Lip Wraps*; the 1997 *Teal Blue Seaform with Amber Body Wrap*; the 2000 *Larkspur Seaform Pair with Gold Lip Wraps*; and the 2002 *Tiger Lily Seaform Pair.*

44.     Chihuly has a certificate of registration for the 2002 *Dark Cherry Seaform Set with Brilliant Yellow Lip Wraps.*

45.     Attached hereto as Exhibit C are true and correct copies of the certificates of registration for *Seaform* series.

### *Macchia Series*

46.     In 1981, Mr. Chihuly began creating sculptures for his highly celebrated *Macechia* series, which evidenced a highly skilled and unique technique that has and continues to evolve.  Mr. Chihuly was inspired to make the Macchia series after deciding to use all 300 colors of glass commercially available and these sculptures feature multi-colored spots and use of contrasting hues on interior and exterior, separated by a layer of white chunks of glass ("clouds") and outlined by a lip wrap of yet another color.  These sculptures are inherently distinctive for, among other things, their brightly spotted markings, which inspired the name "Macchia" (which is Italian for "marked"), and this trade dress has secondary meaning in the market.

47.     Examples of these *Macchia* series works are displayed on Plaintiffs' website, specifically at the URL http://www.chihuly.com/macchia/selmac.html.

48.     Chihuly continues to create sculptures for this series, and Plaintiffs have

COMPLAINT - 12
{63796.DOC}

HENDRICKS & LEWIS
989 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1     certificates of copyright registration for many representative sculptures in the *Macchia* series.

2          49.     Specifically, Portland Press has certificates of registration for the following

3     Studio Editions:  the 2001 *Cinnamon Macchia*; the 2001 *Ruby Macchia*; the 2002 *Ocean*

4     *Macchia*; the 2003 *Moroccan Macchia Pair*; the 2004 *Carnival Macchia*; the 2004 *Starlight*

5     *Seaform Macchia*; the 2005 *Seagreen Macchia Pair*; and the 2005 *Sunset Macchia*.

6

7          50.     Chihuly has certificates of registration for the following works: the 1993

8     *Cadmium Yellow and Crimson Macchia*; the 1994 *Lime Balm Green Macchia with Orange Lip*

9     *Wrap*; the 1995 *Bright Green Macchia with Yellow Lip Wrap*; the 2002 *Dandelion Macchia with*

10    *Deep Green Lip Wrap*; the 2002 *Old Rose Macchia with Lemon Lip Wrap*; the 2002 *Royal*

11    *Yellow Pheasant Macchia Set with Lapis Lip Wraps*; the 2002 *Mardi Gras Pheasant Macchia Set*

12

13    *with Blue and Red Lip Wraps*; and the 2002 *Old Rose Pheasant Macchia Pair with Turquoise*

14    *and Green Lip Wraps*.

15         51.     Attached hereto as Exhibit D are true and correct copies of the certificates of

16    registration for *Macchia* series sculptures are attached hereto as Exhibit D.

17                                    ***Persian Series***

18         52.     In 1986, Mr. Chihuly began creating sculptures for his *Persian* series, which

19    demonstrated a bold and dynamic commitment to color, shape and multiple elements in a single

20    sculpture.  The jewel-like colors and sensual curving of these exotic forms are reminiscent of the

21

22    Middle Eastern vessels of the 12th to 14th centuries, and are distinguished by surface decoration

23    consisting of spiraling "body wraps" and herringbone effects in a single color.  The aesthetic of

24    the *Persian* series is inherently distinctive and this trade dress has achieved secondary meaning

25    in the market.

26         53.     Examples of these *Persian* series works are displayed on Plaintiffs' website,

27

28    COMPLAINT - 13
      {63796.DOC}

specifically at the URL http://www.chihuly.com/persians/selpers.html.

54.     Chihuly continues to create sculptures for this series, and Plaintiffs have certificates of copyright registration for many representative sculptures in the *Persian* series. Specifically, Portland Press obtained certificates of registration for the following Studio Editions: the 1996 *Buttercup Yellow Persian with Red Lip Wrap*; the 1999 *Imperial Iris Persian with Chartreuse Lip Wraps*; the 2001 *Parrot Green Persian Set*; the 2003 *Radiant Persian Pair*; the 2003 *Paradise Persian*; the 2004 *Red Tango Persian*; and the 2005 *Amethyst Persian* (which is the subject of a pending application for registration).

55.     Chihuly has certificates of registration for the following *Persian* sculptures:  the 1999 *Aubusson Red Persian Set with Flint Lip Wrap*; the 2000 *Plum Persian Set with Saffron Yellow Lip Wraps*; and the 2000 *Meltwater Persian with Hunting Coat Red Lip Wrap*.

56.     Attached hereto as Exhibit E are true and correct copies of these certificates of registration of *Persian* series sculptures.

57.     The *Persian* series has evolved to include room-sized installations, including *Persian Wall* installations. In such a project, the *Persian* sculptures are created in a manner identical to the freestanding *Persians*, with one notable exception: a small, multi-inch glass peg is included on the base of the vessel.  Seeking a way to install these works to a wall or other hard surface without the distraction of unsightly hardware, Chihuly found an innovative way to attach the sculpture to the armature.  Less hardware allows for multiple *Persian* sculptures arranged in creative and wholly original configurations, and these installations are among Plaintiffs' most highly sought-after residential installations.  The aesthetic of the *Persian Wall Installations* is inherently distinctive, and this trade dress has achieved secondary meaning in the market. Examples of these *Persian Wall* installations are available on Plaintiffs' website, specifically at

COMPLAINT - 14
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1    the URL http://www.chihuly.com/installations/residential/01.html.

2        58.    Chihuly has certificates of registration for representative *Persian Wall*

3    installations, including the 2000 *BlueJay Persian Wall Installation*, and the 2001 *Autumn*

4    *Persian Wall Installation.*

5        59.    Attached hereto as Exhibit F are true and correct copies of the certificates of

6

7    registration of these *Persian Wall Installations.*

8                              ***Selected Other Series***

9        60.    ***Venetians.***  In 1988, Mr. Chihuly began creating sculptures for his *Venetian*

10   series, which were inspired by his sketches of a private collection of Italian Art Deco glass.

11   Examples of the *Venetian* series' works are displayed on Plaintiffs' website, specifically at the

12   URL http://www.chihuly.com/venetians/selven.html.  Chihuly continues to create sculptures for

13   this series, and Plaintiffs have certificates of copyright registration for representative sculptures

14

15   in the *Venetian* series.

16       61.    ***Ikebanas.***  In 1989, Mr. Chihuly began creating sculptures for his *Ikebana* series,

17   which was inspired by his travels to Japan and exposure to Ikebana masters.  Ikebana is a

18   Japanese word that refers to the art of associating ideas and impressions of nature expressed

19   through flowers.  The *Ikebana* series evolved from the *Venetian* series and features large scale,

20   blown glass flowers and stems in sturdy glass base pieces.  Examples of the sculptures in the

21

22   *Ikebana* series are displayed on Plaintiffs' website, specifically at the URL

23   http://www.chihuly.com/ikebana/selikeb.html.  Chihuly continues to create sculptures for this

24   series, and Plaintiffs have certificates of copyright registration for representative sculptures in the

25   *Ikebana* series.

26

27       62.    ***Niijima Float Series.***  In 1991, Mr. Chihuly began creating sculptures for his

28

COMPLAINT - 15
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

*Niijima Float* series, which was named for the Japanese fishing floats Mr. Chihuly found on the shores of Puget Sound, and a small island in Japan with a glassblowing school. This series features some of the largest pieces of glass ever blown by hand, including large spheres up to 40 inches in diameter and weighing up to 60 pounds. Examples of the *Niijima Float* series are displayed on Plaintiffs' website, specifically at the URL http://www.chihuly.com/floats/selfloat.html. Plaintiffs are seeking certificates of registration for representative sculptures in the *Niijima* Float series.

63.   ***Chandelier Series.***  In 1992, Mr. Chihuly began his *Chandelier* series, which features numerous blown pieces artistically assembled onto a hanging armature with custom illumination. One of these sculptures was installed at the Seattle Art Museum. Two *Chandelier* installations are on display at Seattle's Benaroya Hall. Examples of installations of the *Chandelier* series are displayed on Plaintiffs' website, specifically at the URL http://www.chihuly.com/chands/selchand1.html. Plaintiffs are seeking certificates of registration for representative sculptures in the *Chandelier* series.

### Architectural Installations (Selected)

64.   In 1994, Chihuly created five installations for Tacoma's Union Station Federal Courthouse. Images from this installation are displayed on Plaintiff's website, specifically at the URL http://www.chihuly.com/installations/unionstation. This project marked the beginning of a period in which Mr. Chihuly focused much of his attention on large scale outdoor installations.

65.   For example, in 1995, Mr. Chihuly began a large project entitled *Chihuly Over Venice*, in which Chihuly's team of glassblowers traveled to Nuutajarvi, Finland, Waterford Crystal factory in Ireland and Monterrey, Mexico to make the component pieces for fourteen *Chandelier* series at various sites in Venice, Italy. For this project, Chihuly developed the

COMPLAINT - 16
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1  "quadpod" armature, enabled suspension of the sculptures above the canals and piazzas of

2  Venice without overhead support.  Images from this installation are displayed on Plaintiffs'

3  website, specifically at the URL http://www.chihuly.com/cov/.

4
5      66.      In 1998, Mr. Chihuly created an ambitious and hugely popular architectural

6  installation for the Bellagio Hotel in Las Vegas, which consisted of ceiling-mounted sculptures

7  from the *Persian* series.  Images from this installation are displayed on Plaintiffs' website,

8  specifically the URL http://www.chihuly.com/installations/bellagio/index.html.

9      67.      That same year, Mr. Chihuly also created an architectural installation for the

10  Atlantis Hotel in the Bahamas.  This project included works from the *Chandelier, Tower* and *Soft*

11  *Cylinder* series.  Images from this installation are displayed on Plaintiffs' website, specifically at

12  the URL http://www.chihuly.com/installations/atlantis.

13
14      68.      In 1999, Mr. Chihuly embarked on his most ambitious project to date: an

15  exhibition at the Tower of David Museum in Jerusalem.  This sculpture was 48 feet tall, weighed

16  nearly 2000 pounds, not including the nearly one ton armature.  This installation was part of a

17  larger project entitled *Chihuly in the Light of Jerusalem*, and encompassed nearly every series of

18  Plaintiffs' work, including *Chandeliers, Towers, Reeds, Niijima Floats, Baskets, Cylinders,*

19  *Seaforms, Persians, Venetians,* and *Ikebanas*, as well as many unique sculptures that contain

20  elements of multiple series.  More than a million people visited the museum during the

21  exhibition, which broke an existing world record.

22
23      69.      In 2001, Chihuly presented his first major glasshouse exhibition at the Garfield

24  Park Conservatory in Chicago, Illinois.  This project included works from the *Chandelier,*

25  *Tower, Soft Cylinder, Macchia, Persian, Ikebana* and *Basket* series.  Images from this

26  installation are displayed on Plaintiffs' website, specifically at the URL

27
28

COMPLAINT - 17
{63796.DOC}

http://www.chihuly.com/installations/garfield/index.html.

70.     In 2002, Mr. Chihuly created a group of installations for the Salt Lake 2002 Olympic Winter Games, and, like previous grand-scale installations, this project included works from the *Chandelier, Tower, Soft Cylinder, Macchia, Persian, Ikebana, Basket* and *Seaform* series.  Images from this installation are displayed on Plaintiffs' website, specifically at the URL http://www.chihuly.com/installations/slc2002/index.html.

### *Fiori Series*

71.     In 2003, Mr. Chihuly began *Fiori*, his most recent series, which was born out of Mr. Chihuly's desire to create a garden of glass as an opening exhibit at the Tacoma Art Museum's new building.  The *Fiori* series is a collection of sculptures that reflect the magical, sometimes fantastical, qualities and possibilities of gardens.

72.     For the opening exhibit of the Tacoma Art Museum, Mr. Chihuly created *Mille Fiori* ("Thousand Flowers"), a glass garden of unexpected forms, rich and vibrant in color.  *Mille Fiori* flourishes with a variety of glass elements, such as Neodymium Reeds, Green Fiddleheads, Black Saguaros, and Niijima Floats.  Images from that installation are displayed on Plaintiffs' website, specifically at the URL http://www.chihuly.com/installations/tam/mille002.html.

73.     Chihuly has a certificate of copyright registration for this installation, which is attached hereto as Exhibit G.

74.     Portland Press has applied for copyright registration for *Bel Fiore*, a 2005 Studio Edition first published in March, 2005 and will amend this Complaint to allege this registration upon its issue.

75.     In 2005, Chihuly installed *Gardens of Glass: Chihuly at Kew*, a major garden exhibition, at Kew Gardens in London, England, which was the first such exhibition in Great

COMPLAINT - 18
{63796.DOC}

Britain. This installation includes *Chandeliers, Ikebanas, Macchias, Fiori, Reeds* and *Herons.*

Images from this installation are displayed on Plaintiffs' website, specifically at the URL

http://www.chihuly.com/installations/kew/.

**C.  Defendant Bryan Rubino.**

*Prior Employment Relationship with Plaintiffs*

76.  In 1988, Chihuly hired Defendant Bryan Rubino as an employee and Rubino

served on Chihuly's glassblowing team, which implemented the designs and creations of

Mr. Chihuly.  Rubino resigned in 1995, but rejoined Chihuly in 1997 and remained an employee

until 2000.

77.  In the course of Rubino's employment with Chihuly, Rubino worked on virtually

every series created by Chihuly, including, without limitation, *Baskets, Cylinders, Ikebanas,*

*Persians, Seaforms, Chandeliers, Towers* and various *Architectural Installations.*

78.  On or about December 6, 1999, while an employee of Chihuly, Rubino executed a

Confidentiality Agreement, wherein he acknowledged that in the course of performing his

artistic services for Chihuly, Rubino would acquire proprietary information concerning

confidential matters related to artistic matters, or might be exposed to processes and other

information (defined in the Agreement as "Confidential Information) of Chihuly.  Rubino

expressly acknowledged that this Confidential Information was proprietary information owned

by Chihuly, whether or not said information was protected under the copyright, patent, or trade

secret laws of the United States.

79.  In exchange for employment by Chihuly and receipt of this valuable proprietary

information, Rubino agreed to receive the Confidential Information in full confidence and further

agreed not to use, divulge, exploit or in any way interfere with the rights of Chihuly in its

COMPLAINT - 19
{63796.DOC}

1   Confidential Information.

2       80.     The Confidentiality Agreement also contained an attorneys' fees clause, wherein

3   Rubino agreed that in the event an action, suit or legal proceeding was brought to enforce any or

4   all of the provisions of the Agreement, the prevailing party shall be entitled to attorneys' fees,

5   costs, and disbursements as are deemed reasonable and proper.

6

7       81.     In 2000, Chihuly terminated Rubino's employment, and Rubino was thereafter

8   engaged as an independent, work-for-hire contractor.  Under this arrangement, Chihuly

9   contracted with Rubino for Rubino's glassblowing services on a project-by-project basis.

10  Rubino executed work-for-hire documents, maintained his own studio and Chihuly contracted

11  with him for specific projects on an as-needed basis.  Under such circumstances, Rubino

12  invoiced Chihuly a rental fee for use of Rubino's facilities, and also billed Chihuly for his labor

13  expenses and assorted reimbursements, including materials.  At all times during this relationship,

14

15  Rubino was under the direction and control of Chihuly, and all materials for the work produced

16  were provided by or reimbursed by Chihuly.

17      82.     In the course of this work-for-hire relationship, Rubino worked on several of

18  Plaintiffs' copyrighted works, including, without limitation, *Chinese Red Seaform* and *Lakespur*

19  *Seaform Pair* (see paragraph 43 above); *Mango Basket, Paris Blue Basket, Citrion Basket* and

20  *Bonfire Basket* (as set forth in paragraph 38 above); *Ruby Macchia* and *Ocean Macchia* (as set

21  forth in paragraph 49 above); *Paradise Persian* (as set forth in paragraph 54 above); and the *Bel*

22  *Fiori* (as set forth in paragraph 74 above).  As set forth above, all of these works are the subject

23  of valid certificates of copyright registration.

24

25      83.     Over the course of the work-for-hire relationship between Chihuly and Rubino,

26  Rubino executed further documents in which he agreed not to produce as his own "Rubino glass"

27

28

COMPLAINT - 20
{63796.DOC}

those works conceived and designed by and made for Chihuly.  The most recent of these documents was executed on or about February 6, 2004.

### Rubino's Acts of Infringement

84.     Despite his contractual obligations and in contravention of federal copyright law, Rubino is making unauthorized reproductions of Plaintiffs' copyrighted sculptures, and these reproductions are substantially, even strikingly, similar to Plaintiffs' sculptures, including, but not limited to, sculptures in Plaintiffs' *Basket, Seaform, Macchia, Persian, Persian Wall, Chandelier* and *Fiori* series.  Rubino delivers or causes the transfer of these infringing works to co-Defendant Robert Kaindl, who then resells them as Kaindl's original works of authorship.

85.     Upon information and belief, Rubino is also creating sculptures that are substantial, even strikingly, similar to the copyrighted works of Plaintiffs, including sculptures in Plaintiffs' *Basket* series, and selling these works under the fictitious name "Lestat" and/or other false designations of origin.  Upon further information and belief, these "Lestat" works are being sold at, among other places, Defendant Lakeshore Gallery, and Rubino has instructed Lakeshore Gallery not to reveal his name to prospective customers.

86.     Upon information and belief, Rubino is infringing upon Plaintiffs' copyrights by creating unauthorized reproductions of Plaintiffs' copyrighted work, selling sculptures that are substantially, even strikingly, similar to Plaintiffs' copyrighted work, and falsely claiming authorship of Plaintiffs' copyrighted work, all in violation of federal law.  Rubino is further injuring Plaintiffs by causing unauthorized reproductions of Plaintiffs' sculptures to be sold at prices substantially below the fair market value, which devalues Plaintiffs' copyrighted work and the goodwill associated therewith.

87.     Upon further information and belief, Rubino is attempting to palm off or

COMPLAINT - 21
{63796.DOC}

1   otherwise trade upon the goodwill associated with Plaintiffs' trade dress by making unauthorized

2   copies of Plaintiffs sculptures and selling these sculptures under the name Kaindl and/or Lestat,

3   which is likely to confuse customers as to the source and authorship of the sculptures.

4   **D.   Defendant Robert Kaindl.**

5

6   *Background Information*

7   88.    Upon information and belief, Defendant Robert Kaindl uses the internet to

8   promote himself and a host of businesses, few of which are legitimate.  Kaindl operates over 50

9   websites, offering everything from roof cleaning, to golf exhibition and, more recently,

10  commissioned blown glass sculptures.

11  89.    As one example, at the URL http://longdrivers.net/, Kaindl offers his services as a

12  long golf exhibitor, apparently under the trade name "longdrivers.net" and/or "Affordable

13  Professional Long Drivers Association."  Although the website offers purported "testimonials"

14  from satisfied customers (including the Boeing corporation), neither longdrivers.net nor

15  Affordable Professional Long Drivers Association are registered with the Washington Secretary

16  of State or with the Washington Department of Revenue.  The website further claims that Kaindl

17  earned the "World's Longest Driving Distance Record" in golf.  Specifically, Kaindl claims to

18  have earned this "world record" at a golf tournament at Coyote Lake Golf Course in Arizona.

19

20  However, neither the Coyote Lake Golf Course nor the Long Drivers of America (a duly

21  registered and professional organization of long distance golf drivers) have knowledge or

22  documentation of this claimed "record."

23

24  90.    Likewise, on his many websites offering glassblowing services (including at

25  http://artglassproduction.com/FeaturedGlassArtist.htm), Kaindl claims to have been "extremely

26  fortunate to train and work with some of the world's most well-known glass artists."  Upon

27

28

COMPLAINT - 22
{53796.DOC}

1  further information and belief, Kaindl has represented to galleries and customers that he trained

2  at Pilchuck Glass School and formerly served as a glassblower for Plaintiffs.

3      91.    However, the Pilchuck Glass School has no record of Kaindl attending any

4

5  classes or programs there, and Kaindl has never worked with Mr. Chihuly and/or served on

6  Plaintiffs' glassblowing team.  Plaintiffs are unaware of any sculptures actually made by Kaindl,

7  and, upon information and belief, Kaindl has little, if any, competency as a glassblower, he has

8  had no formal training or education on glassblowing techniques and has no actual experience as

9  a glassblower.

10  *Kaindl's Acts of Infringement*

11      92.    Upon information and belief, Kaindl embarked upon a scheme to infringe

12

13  Plaintiffs' copyrighted works and wrongfully profit from the sales thereof.  To this end, Kaindl

14  solicited several of Plaintiffs' current and former employees, offering them substantial

15  compensation to produce "Chihuly work."  Most of these employees declined to infringe

16  Plaintiffs' copyrighted work.

17      93.    One former employee, however, agreed to this scheme.  Bryan Rubino, Plaintiffs'

18  former employee, agreed to make unauthorized reproductions of Plaintiffs' sculptures in

19

20  exchange for financial compensation.  Upon information and belief, Kaindl solicited Rubino for

21  the express purpose of selling unauthorized reproductions of Plaintiffs' copyrighted sculptures in

22  interstate commerce.

23      94.    Under this scheme, Kaindl pays Rubino to make unauthorized reproductions of

24  Plaintiffs' copyrighted sculptures, reimbursing Rubino for his time and materials.  Kaindl then

25  sells these infringing works under his own name, through his many websites, at trade shows, and

26  at Defendants Kenneth Behm Gallery, Lakeshore Gallery, Trammell-Gangne and Unik!.

27

28

COMPLAINT - 23
{63796.DOC}

95.     Upon further investigation, Plaintiffs have learned that Kaindl is blatantly and falsely claiming authorship of Chihuly's work.  As one example, an investigator hired by Plaintiffs visited the Defendant Kenneth Behm Gallery's Bellevue, Washington location and conversed with Kaindl and Gallery employees about "Kaindl's" work on display therein.  Kaindl showed these investigators photos of his alleged "work" and included photos of the Chihuly *Chandeliers* installed at Benaroya Hall.  Kaindl claimed that he had done "parts" of the Chihuly *Chandelier* and worked on the other installations "under a different name."

96.     At no time has Kaindl produced any work for Plaintiffs.  Kaindl has never been engaged by Plaintiffs in any capacity and has never served on any of Plaintiffs' glassblowing teams.  Kaindl has had no professional association with Plaintiffs.

97.     Defendant Robert Kaindl is infringing upon Plaintiffs' intellectual property rights by inducing others to create unauthorized reproductions of Plaintiffs' copyrighted sculptures, selling work that is substantially, even strikingly, similar to Plaintiffs' copyrighted work, falsely claiming authorship of Plaintiffs' copyrighted work, and falsely representing an association with and/or affiliation with Plaintiffs, all in violation of federal law.  Kaindl is further injuring Plaintiffs by causing unauthorized copies to be sold at prices substantially below the fair market value, which devalues Plaintiffs' copyrighted work and the goodwill associated therewith.

### *Kaindl's False and Misleading Websites*

98.     Upon information and belief, Defendant Kaindl owns, operates and/or maintains a website displayed at the URL http://www.artglassproductions.com.  The content of this website is substantially "mirrored" at the websites set forth in paragraph 6.

99.     Upon information and belief, the websites use Plaintiffs' name and registered mark, as well as images of Plaintiffs' copyrighted work, to promote the sale of, among other

COMPLAINT - 24
{63796.DOC}

1   things, Defendants' "custom original glass art gallery quality works, virtual productions (*sic*)

2   replications."

3       100.    Further investigation and navigation of these sites revealed a link to "Custom Art

4   Glass," which includes a drop-down menu for further options, including "Contemporary Art

5   Glass." Upon selection of this option, the site offers a further selection of the types of

6   contemporary art glass ostensibly offered, including *Baskets, Cylinders, Floats, Ikebanas, Sea*

7

8   *Forms, Sea Shapes,* and *Venetians.* These are the trade names of the series created and sold by

9   Plaintiffs.

10      101.    The sites also have a page titled "Virtual Productions Replications," which

11  features the following content (spelling and grammatical errors reproduced):

12

13          Virtual Production Replications does not mean Forgeries. We do
            not participate in or condone copying existing original works of
14          any artist with their name on it. We produce "original" art glass
            works only with our names on our projects.

15
            Other than Virtual Production Replications, we make "Original"
16          glass art pieces that may also be guided by your creative desires,
            artistic needs, unlimited imagination or direct input. All of the
17          custom glass art projects that flow through our organization will
            have none other than the creating artists, gaffer or talented
18          glassworkers name signed on your assignment. In turn, assuring
            you and delivering to you the absolute highest gallery quality hot
19          glass product for the very best prices.

20
            Reflected in our "Glass Art Dictionary." Virtual Production
21          Replications is the remaking and replacement of an unattainable
            original production glass piece with an as close as possible custom-
22          made glass piece for repair, recovery or restoration for historic
            purposes, etc. For example – replacing exclusive glass projects,
23          reinstate damaged family treasures, heirlooms, replacing a glass
            cylinder that is part of an antique valuable lantern, clock covers, or
24          anything along those lines.

25

26      102.    The sites also have a page entitled "Art Gallery Options," which features the

27  following content (spelling and grammatical errors reproduced):

28

COMPLAINT - 25
{63796.DOC}

1

2

After you've exhausted all of your available solutions of finding your client a Glass Art works that fits or interests them, we may be your only remaining option...

3

4

5

6

7

8

9

Our Art Gallery Options program will allow you one last final option to make the sale. Before your customer walks out of your gallery and goes to your competitors gallery, refer them to the concept of custom made glass art. We are a valuable discreet partner and a great asset for your custom glass art needs. You'll get the commission for the sale along with the recognition for the referral. We can custom make the glass art piece exactly how your client wants along with being made specifically for the spot that they want it in. We will also direct that custom transaction through your gallery or directly through us, whatever you prefer...

10

11

12

13

We silently represent 100's of custom glass art galleries throughout the World! Apart from our previously satisfied customers, we annually services 1,000's of new customers. Great reliable service, reasonable prices and leading edge glass working skills are continually helping our efforts in delivering your business for today while building on our future relationships with you, for tomorrow...

14

15

16

17

18

19

20

E-mail us at GalleryOwners@ArtGlassProduction.com and we will send you a response with a first phase packet. If your galleries request for inclusion is accepted?  We will respond to you with an additional acceptance information packet. This acceptance packet includes an agreement, specific directions, and your exclusive codes and the secrete location address allowing you access into specific secured areas of this site. You will also get the formatting codes of your customer's entire referral base, assuring proper payments, recognition, and information regarding a specific clients progress.

21

22

23

103.    Upon information and belief, Kaindl and/or Art Glass Production do not "represent" hundreds of galleries throughout the world.  Upon further information and belief, Kaindl and/or Art Glass Production do not represent any galleries.

24

25

104.    The sites also contain a page entitled "Chihuly Glass," which features the following text (spelling and grammatical errors reproduced):

26

27

We can arrange your custom glass works to be actually made by a specific "Glass Masters" or their exclusive team if they have one.

28

COMPLAINT - 26
{63796.DOC}

1  Just let us know and we'll try to arrange your request and make it a
   reality.

2

3  Your precise hot glass project will be made exclusively for you by
   a specifically requested "Glass Master" or their personal team of

4  your choice.  As a value added bonus, we could even include you
   personally in the effort by having you work directly with the

5  "Glass Masters".  Granted, the price of your project will also
   reflect this special service.  This experience will be more than

6  worth the additional expense.  Our expectations are that you will

7  find this experience in lighting, riveting and extremely rewarding.

8  You might have slightly less input in the artistic creativity portion
   of your product, if you choose this "Glass Master" program.  You

9  will still have the same stringent requirement controls of your
   specific glass assignment as you would have with any option.

10

11 In some situations and depending upon the arrangements that some
   artists may have with individual galleries.  We would contact a

12 gallery that represents those specific artists that would be working
   with your custom project to avoid any conflict of professional

13 interest.  The galleries that we use are already confirmed with us as
   flow-through partners.  Making this entire process attractive and

14 more affordable for both the gallery, and as well as for you...

15

16     105.    Upon information and belief, Defendant Kaindl is using Chihuly's name and

17 registered mark to falsely represent that Mr. Chihuly is a "Glass Master" associated with or

18 otherwise affiliated with Defendant Kaindl and/or Art Glass Production (or any of his

19 unregistered aliases thereof).

20     106.    At no time has Mr. Chihuly had any professional or personal association with

21 Defendant Kaindl and at no time has Mr. Chihuly or any of Chihuly's current employees

22 performed glassblowing services for Defendant Kaindl.

23

24     107.    Upon information and belief, these websites are using images and/or pictures of

25 Plaintiffs' works and the name "Chihuly" to (1) falsely suggest that these images upon the

26 website represent the original artwork of the Defendant Kaindl; (2) falsely suggest an association

27 between Chihuly and the website and/or Defendant Kaindl; or (3) falsely represent that

28

COMPLAINT - 27
{63796.DOC}

1  Defendants are authorized to create, copy and/or otherwise replicate Chihuly designs.

2      108.    Further investigation of these website revealed that the registered trademark

3  "Chihuly" is used as a metatag on both sites. As a result, when customers enter "Chihuly" into a

4
5  search engine such as Google, the search engine renders these websites as matches for that

6  keyword. Upon information and belief, Defendants are using Chihuly's registered mark to palm

7  off on the substantial goodwill Chihuly has earned in these marks.

8      109.    Plaintiffs have sent a cease and desist to Defendant Kaindl, demanding that he

9  immediately stop using Chihuly's name, registered trademarks and rights of publicity on these

10  websites.

11      110.    Upon information and belief, Kaindl has not removed Chihuly's intellectual

12
13  property and continues to use Chihuly's name, trademarks and rights of publicity in order to

14  increase traffic to these sites.

15  **E.**    **Defendants Kenneth Behm Gallery, Lakeshore Gallery, Trammell-Gagne
and Unik!**

16

17  ***Kenneth Behm Gallery***

18      111.    Defendant Kenneth Behm Gallery sells a number of works purportedly created by

19  Defendant Kaindl that directly infringe Plaintiffs' copyrights, including, without limitation,

20  works that infringe Plaintiffs' *Persian, Macchia, Seaform* and *Persian Wall* series. Upon

21  information and belief, employees of the Behm Gallery have represented to prospective

22  customers that certain artwork was created by Kaindl, and have further represented to

23  prospective customers that Kaindl is a former glassblower for Plaintiffs

24

25  ***Lakeshore Gallery***

26      112.    Defendant Lakeshore Gallery sells a number of works purportedly created by

27  Defendant Kaindl that directly infringe Plaintiffs' copyrights, including, without limitation,

28

COMPLAINT - 28
{63796.DOC}

1    works that infringe Plaintiffs' *Persian, Macchia, Seaform* and *Persian Wall* series.  Upon

2    information and belief, employees of the Lakeshore Gallery have represented to prospective

3    customers that certain artwork was created by Kaindl and/or "Lestat," and have further

4    represented that Kaindl is a former glassblower for Plaintiffs.

5

6                                    ***Trammell-Gagne***

7         113.    Defendant Trammell-Gagne sells a number of works purportedly created by

8    Defendant Kaindl that directly infringe Plaintiffs' copyrights, including, without limitation,

9    works that infringe Plaintiffs' *Persian, Macchia, Seaform* and *Persian Wall* series.  Upon further

10   information and belief, Haley Vermillion, a sales associate for Trammell-Gagne, represented to

11   prospective customers that while these sculptures looked identical to Chihuly's works, they were

12   much more affordable than Chihuly's sculptures.  Upon further information and belief,

13   Ms. Vermillion has represented to prospective customers that certain artwork therein on display

14   was created by Kaindl, and has further represented that Kaindl had served as a glassblower for

15   Plaintiffs.

16

17                                         ***Unik!***

18        114.    Defendant Unik! sells a number of works purportedly created by Defendant

19   Kaindl that directly infringe Plaintiffs' copyrights, including, without limitation, works that

20   infringe Plaintiffs' *Persian, Macchia, Seaform* and *Wall Spinner* series.  Upon information and

21   belief, employees of the Unik! have represented to prospective customers that certain artwork

22   was created by Kaindl, and have further represented to prospective customers that Kaindl is a

23   former glassblower for Plaintiffs.

24

25

26

27

28

COMPLAINT - 29
{63796.DOC}

1
2

**FIRST CAUSE OF ACTION
COPYRIGHT INFRINGEMENT
(AGAINST ALL DEFENDANTS)**

3
4

115.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing

5

paragraphs 1 through 114 as though fully set forth herein.

6

116.    Plaintiffs own valid copyrights in their original works and have certificates of

7

registration for certain of these works.  These certificates of registration constitute *prima facie*

8

evidence of Plaintiffs' ownership of these copyrights.

9

117.    Without authorization, Defendants have willfully copied, sold and distributed

10

Plaintiffs' copyrighted work and these unauthorized copies are substantial, even strikingly,

11
12

similar to the ordinary observer, all in violation of federal law.

13

118.    Defendants had access to Plaintiffs' copyrighted works through Defendant

14

Rubino's prior employment relationship with Chihuly and also through the publication and/or

15

display of these works.  Defendant Rubino creates the unauthorized copies for re-sale by his co-

16

Defendants, and also sells unauthorized copies himself under the name "Lestat."

17

119.    Defendant Kaindl operates and maintains a website at

18
19

http://www.artglassproductions.com and at least 38 other URLs and, without license or

20

authorization, through which he sells replications of Chihuly's copyrighted works that are

21

substantially similar, even strikingly, similar to Chihuly's copyrighted works.

22

120.    Defendants Kenneth Behm Gallery, Lakeshore Gallery, Trammell-Gagne and

23

Unik! knew or should have known these works infringed the copyrights of Plaintiffs and they

24

willfully sold these infringing works and received profits therefrom.

25

121.    Defendants and each of them have induced, caused or materially contributed to

26
27

the infringing acts alleged herein and are each liable to Plaintiffs for direct, contributory or

28

COMPLAINT - 30
{63796.DOC}

1  vicarious copyright infringement.

2      122.    Defendants and each of them have benefited economically in the form of

3  continued and increased revenues from the sale of the infringements alleged herein.

4      123.    Plaintiffs have been injured and have suffered damage as a consequence of

5
6  Defendants' infringements.

7      124.    As a result of Defendants' willfully infringing acts, contributory infringements

8  and vicarious infringements, Plaintiffs have been injured and have suffered damages in an

9  amount to be proved at trial.

10      125.    In addition to Plaintiffs' actual damages, Plaintiffs claim such other remedies to

11  which it may be entitled by law, including Defendants' revenues and profits pursuant to 17

12
13  U.S.C. § 504(b); at Plaintiffs' election and in the alternative, statutory damages pursuant to 17

14  U.S.C. § 504(c); injunctive relief pursuant to 17 U.S.C. § 502; impoundment and destruction of

15  infringing articles pursuant to 17 U.S.C. § 503; and attorneys' fees and costs pursuant to 17

16  U.S.C. § 505, and as otherwise allowed by law.

17
18  **SECOND CAUSE OF ACTION**<br>**VIOLATIONS OF THE LANHAM ACT AND UNFAIR COMPETITION**<br>**(AGAINST ALL DEFENDANTS)**

19
20      126.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing

21  paragraphs 1 through 114 as though fully set forth herein.

22      127.    In connection with Defendants' marketing activities, including commercial

23  advertising and promotion, Defendants have used false designations of origin, false or

24  misleading descriptions of fact, and false or misleading misrepresentations of fact which are

25  likely to cause confusion or to cause mistake, or to deceive as to the origin, sponsorship, or

26  approval of Defendants' goods, services and commercial activities by Plaintiffs, all in violation

27
28

COMPLAINT - 31
{63796.DOC}

HENDRICKS & LEWIS
999 THIRD AVENUE, SUITE 2675
SEATTLE, WASHINGTON 98104
(206) 624-1933

1    of 15 U.S.C. §1125(a)(1)(A).

2          128.    In further connection with Defendants' marketing activities, including

3    commercial advertising and promotion, Defendants have misrepresented the nature,

4    characteristics, and qualities of the sculptures sold under the name "Robert Kaindl" and "Lestat,"

5
6    all in violation of 15 U.S.C. §1125(a)(1)(B).

7          129.    Plaintiffs' registered mark is famous, and Defendants willfully intended to use

8    this mark to trade upon Plaintiffs' reputation and goodwill, and sought to dilute Plaintiffs' mark,

9    all in violation of 15 U.S.C. §1125(c).

10         130.    Plaintiffs' trade dress is protectable under the Lanham Act because it is inherently

11   distinctive and has achieved secondary meaning in the market.  Defendants' use of substantially,

12
13   even strikingly, similar trade dress is likely to cause confusion or to cause mistake, or to deceive

14   as to the origin, sponsorship, or approval of Defendants' goods and services.

15         131.    As a result of Defendants' violations of 15 U.S.C. § 1125(a), from which

16   Defendants have profited, Plaintiff has been and will continue to be damaged.  Plaintiffs

17   therefore seek to recover Plaintiffs' damages, Defendants' profits, and the costs of this action, in

18   an amount to be proved at trial.

19         132.    Upon information and belief, Defendants' actions and conduct were willful.

20   Plaintiffs therefore seek a judgment of up to three (3) times its damages, together with reasonable

21
22   attorneys' fees pursuant to 15 U.S.C. § 1117(a).

23         133.    In addition, Plaintiffs have no adequate remedy at law.  Defendants' conduct

24   described herein has caused and, if not enjoined will continue to cause, irreparable damage to

25   Plaintiffs' rights in its marks, and to the business, positive reputation and goodwill of Plaintiffs,

26   which cannot be adequately compensated solely by monetary damages.  Plaintiffs therefore seek

27
28

COMPLAINT - 32
{63796.DOC}

1   preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C.

2   §1125(c).

3                              **THIRD CAUSE OF ACTION**
4        **VIOLATION OF THE WASHINGTON STATE CONSUMER PROTECTION ACT**
                              **(AGAINST ALL DEFENDANTS)**
5

6        134.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing

7   paragraphs 1 through 114 as though fully set forth herein.

8        135.    Defendants and each of them have engaged in unfair and deceptive practices in

9   the conduct of interstate commerce, including, without limitation, making false statements about

10  the authorship of the sculptures sold by Defendants, making false and/or misleading

11  representations suggesting a relationship between Defendant Kaindl and Plaintiffs, making false

12  
13  and/or misleading statements about the business of Art Glass Production and creating and/or

14  selling unauthorized replications of Plaintiffs' sculptures.

15       136.    These unfair and deceptive practices have an impact on the public interest, are

16  part of a generalized pattern and have the potential for repetition.

17       137.    As a direct and proximate result of Defendants' unfair and deceptive acts and

18  practices in violation of the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*,

19  
20  Plaintiffs have been injured and suffered losses in their business or property.

21       138.    Under RCW 19.86.090, Plaintiffs are entitled to recover damages in an amount as

22  may be proved at trial, together with the costs of suit, including reasonable attorneys' fees and

23  treble damages not to exceed $10,000.

24                             **FOURTH CAUSE OF ACTION**
25                               **CIVIL CONSPIRACY**
                              **(AGAINST ALL DEFENDANTS)**
26
     139.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing
27

28

COMPLAINT - 33
{63796.DOC}

1    paragraphs 1 through 114 as though fully set forth herein.

2        140.    Defendants combined to accomplish an unlawful purpose or combined to

3    accomplish a lawful purpose by unlawful means, namely, to profit from the sale of unauthorized

4    replications of Plaintiffs' sculptures, which are substantially, often strikingly similar to the

5    artwork of Plaintiffs and infringes Plaintiffs' registered copyrights thereupon.

6

7        141.    Defendants entered into agreements to accomplish the conspiracy, including but

8    not limited to, making, marketing, advertising and selling infringing sculptures made by

9    Defendant Rubino under false and/or misleading names, including Kaindl and/or Lestat; making

10   false and misleading representations, about the relationship between Defendants Kaindl and Art

11   Glass Production and Plaintiffs, and making false and/or misleading statements about the

12   business of Art Glass Production.

13

14       142.    As a proximate result thereof, Plaintiffs have been injured and suffered damages

15   in an amount to be proven at trial.

16                          **FIFTH CAUSE OF ACTION**
                            **BREACH OF CONTRACT**
17                    **(AGAINST DEFENDANT BRYAN RUBINO)**

18       143.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing

19   paragraphs 1 through 114 as though fully set forth herein.

20

21       144.    Plaintiffs have valid and enforceable agreements with Rubino concerning certain

22   proprietary information and intellectual property associated with Plaintiffs' blown glass

23   sculptures.

24       145.    Defendant Bryan Rubino materially breached these agreements with Plaintiffs by

25   creating and selling blown glass sculptures that are substantially similar to Plaintiffs and which

26   improperly used the propriety information and intellectual property of Plaintiffs, all in

27

28

COMPLAINT - 34
{63796.DOC}

1   contravention of the contractual agreements between Plaintiffs and Rubino.

2       146.   As a proximate result thereof, Plaintiffs have been injured and suffered damages

3   in an amount to be proven at trial.

4                            **SIXTH CAUSE OF ACTION**
5                  **INTENTIONAL INTERFERENCE WITH CONTRACT**
                            **(AGAINST DEFENDANT KAINDL)**
6

7       147.   Plaintiffs reallege and incorporate by reference the allegations in the foregoing

8   paragraphs 1 through 114 as though fully set forth herein.

9       148.   Plaintiffs have a valid contractual relationship with co-Defendant Rubino, the

10  terms of which specifically prohibited from using or sharing Plaintiffs' proprietary information

11  and intellectual property.

12
        149.   Defendant Kaindl knew of this contractual relationship between Plaintiffs and
13
14  Defendant Rubino and wrongfully sought to interfere therewith for a wrongful purpose.

15      150.   Kaindl intentionally interfered with this contractual relationship by inducing

16  Rubino to materially breach his contract with Plaintiffs.  Specifically, Kaindl paid Rubino to

17  make unauthorized copies of Plaintiffs' copyrighted work, which under the terms of his contract

18  with Plaintiffs, Rubino expressly agreed not to do.

19
        151.   Kaindl's interference was for an improper purpose, namely, to profit from the sale
20
21  of artwork he knew to be unauthorized and infringing.  Kaindl intentionally misrepresented that

22  he was the author of the work and falsely suggested an association with Plaintiffs to accomplish

23  these sales.

24      152.   As a proximate result thereof, Plaintiffs have been injured and suffered damages

25  in an amount to be proven at trial.

26

27

28
    COMPLAINT - 35
    (63796.DOC)

### SEVENTH CLAIM FOR RELIEF
### INJUNCTIVE RELIEF
### (AGAINST ALL DEFENDANTS)

153.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing paragraphs 1 through 114 as though fully set forth herein.

154.    As described herein, Plaintiffs have valid copyright registrations for certain representative sculptures in Plaintiffs' various series and are the rightful owners of all copyrights in Plaintiffs' broad body of work.

155.    With full knowledge of Plaintiffs' ownership interest in these copyrights, Defendants have wrongfully replicated, sold and distributed works that are substantially similar to Plaintiffs, which has caused considerable and irreparable injury to Plaintiffs.  Unless enjoined by this court, Plaintiffs face a substantial likelihood of irreparable harm, including the irreparable devaluing of Plaintiffs' artwork.

156.    Plaintiffs therefore request that Defendants, and their agents, servants, employees, representatives, successors and assigns and all person, firms or corporations in active concert or participation with Defendants, be preliminarily and permanently enjoined from creating, marketing, advertising, displaying, selling or otherwise distributing copies of Plaintiffs' artwork, as described herein.

157.    Plaintiffs further request that Defendants, and their agents, servants, employees, representatives, successors and assigns and all persons, firms or corporations in active concert or participation with Defendants, be preliminarily and permanently enjoined from falsely representing an affiliation between Plaintiffs and Defendants, from falsely asserting authorship or creation of Plaintiffs' copyrighted artwork.

158.    Pursuant to 15 U.S.C. § 503, Plaintiffs further request on order for the

COMPLAINT - 36
{63796.DOC}

1   impounding and destruction of all unauthorized copies of Plaintiffs' work made by Defendants,

2   including but not limited to, those copies offered for sale at Defendants Kenneth Behm Galleries,

3   Lakeshore Gallery, Trammell-Gagne, and Unik!, as well as copies known or discovered by

4   Plaintiffs.

5

6                          **EIGHTH CAUSE OF ACTION**
                           **DECLARATORY RELIEF**
7                          **(AGAINST ALL DEFENDANTS)**

8           159.    Plaintiffs reallege and incorporate by reference the allegations in the foregoing

9   paragraphs 1 through 114 as though fully set forth herein.

10          160.    Plaintiffs request that this Court issue a declaratory judgment pursuant to 28

11  U.S.C. § 2201, *et seq.*

12
    161.    There is an actual and existing controversy between Plaintiffs and Defendants
13
14  requiring immediate resolution.  Plaintiffs have genuine and opposing interests from Defendants.

15  These interests are direct and substantial, including significant artistic and economic interests.  A

16  judicial determination of the controversy will be final and conclusive as to the rights and

17  obligations of the parties.

18          162.    Plaintiffs are the lawful owner of certain copyrights and have obtained valid
19
    certificates of registration for every published glass sculpture and for representative unpublished
20
21  sculptures.

22          163.    Without permission or authorization, Defendants are creating, marketing,

23  advertising, displaying, selling or otherwise offering for sale sculptures that are substantially,

24  even strikingly, similar to Plaintiffs' copyrighted work, and Plaintiffs are being damaged

25  thereby.

26          164.    Plaintiffs therefore request that the Court declare that Plaintiffs are the rightful
27

28
    COMPLAINT - 37
    {63796.DOC}

1    owners of the copyright interests at issue and that Defendants are not licensed, authorized or

2    otherwise permitted to make copies of Plaintiffs' protected work.

3        165.    Because of the immediate and ongoing harm to Plaintiff and others resulting from

4
5    the present controversy, Plaintiffs further request that, pursuant to FED. R. CIV. P. 57, the Court

6    order a speedy hearing of Plaintiffs' request for declaratory judgment.

7                              **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiffs respectfully request judgment and other relief against

9    Defendants as follows:

10       1.    That this Court enter a declaratory judgment in Plaintiffs' favor and against

11
12   Defendants, as set forth in paragraphs 159 through 165 above, including all necessary or proper

13   ancillary relief, along with an award of reasonable attorneys' fees and costs to Plaintiffs.

14       2.    That this Court order a speedy hearing on Plaintiffs' request for declaratory

15   judgment pursuant to FED. R. CIV. P. 57 and preliminary injunctive relief pursuant to 17 U.S.C.

16   § 503(a) to impound the infringing copies.

17       3.    That this Court enter judgment in Plaintiffs' favor against all Defendants for

18
19   copyright infringement, resulting in damages to Plaintiffs in amounts to be proved at trial,

20   including, without limitation, Defendants' profits attributable to sale of the infringing works,

21   including an award of reasonable attorneys' fees and costs to Plaintiffs.

22       4.    That this Court enter judgment in Plaintiffs' favor against all Defendants for

23   federal unfair competition and false advertising, resulting in damages to Plaintiffs in amounts to

24   be proved at trial, together with an award of reasonable attorneys' fees and costs to Plaintiffs.

25       5.    That this Court enter judgment in Plaintiffs' favor against all Defendants for

26
27   violations of the Washington Consumer Protection Act resulting in damages to Plaintiffs in

28

COMPLAINT - 38
{63796.DOC}

amounts to be proved at trial, along with treble damages not to exceed $10,000 and an award of reasonable attorneys' fees and costs.

6. That this Court enter judgment in Plaintiffs' favor against Defendant Bryan Rubino for breach of contract resulting in damages to Plaintiffs in amounts to be proved at trial, but in any event not less than $1 million, along with specific performance of the contract between Chihuly and Rubino, and an award of reasonable attorneys' fees and costs.

7. That this Court enter judgment in Plaintiffs' favor against Defendant Robert Kaindl for intentional interference with contract resulting in damages to Plaintiffs in amounts to be proved at trial but in any event not less than $1 million, including an award of reasonable attorneys' fees.

8. That this Court grant preliminary and permanent injunctive relief against Defendants as described herein.

9. Such further and additional relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff demands trial by jury of all issues so triable in this matter.

DATED this **27**th day of October, 2005.

Respectfully submitted,

HENDRICKS & LEWIS

By: *[signature]*

O. Yale Lewis, Jr.
WSBA No. 01367
Kari L. O'Neill
WSBA No. 31869
Attorneys for Plaintiffs

COMPLAINT - 39
{63796.DOC}